**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SARAH LOPRESTI,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**CERTIFIED MEDIA LLC,** a Florida company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiff Sarah LoPresti ("Plaintiff LoPresti" or "LoPresti") brings this Class Action Complaint and Demand for Jury Trial against Defendant Certified Media LLC ("Defendant" or "Certified Media") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited telemarketing text messages to consumers whose phone numbers are registered on the National Do Not Call Registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff LoPresti, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff LoPresti is a resident of Medford, Massachusetts.

2. Defendant Certified Media is a Florida company located in Miami. Defendant Certified Media conducts business throughout this District and throughout Massachusetts.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since Defendant does business in this District and the wrongful conduct giving rise to this case was directed to the Plaintiff who resides in this District.

## INTRODUCTION

5. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in August 2025 alone, at a rate of 133.9 million per day. www.robocallindex.com (last visited September 29, 2025).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Defendant Certified Media provides solar and roofing leads to businesses throughout the US.[3]

14. Defendant sends telemarketing text messages *en masse* to consumers to generate its solar leads.

15. Some of the unsolicited telemarketing text messages from Certified Media are sent to consumers whose phone numbers are registered on the DNC, as per Plaintiff's experience.

16. Blake Saunders is the CEO/owner of Certified Media and also of Phantom Data, another company that provides leads to businesses.[4]

17. Saunders is open about the cold calling/texting Certified Media engages in to generate business.

18. In a YouTube interview with Otter PR – From Entrepreneur to Lead Magnet: How to Generate More B2C Leads, Saunders discusses how Certified

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://certifiedmedia.io/
[4] https://www.linkedin.com/in/blake-saunders-b8873913a/

Media generates business stating, "The important thing we do is obviously cold calling. Our target market is homeowners… we just buy the data online. We also do cold texting…"[5]

19. In another video that was posted on Vimeo in August of 2025 – Rules of SMS, Saunders explains, "We follow a very specific 2050 and 1 rule, and what that means is we send 2000 text messages a day, typically 50 SMS every 1 minute…"[6]

20. Saunders goes on to explain how Certified Media tries to avoid liability for its cold texting through subterfuge, even admitting that Certified Media sends unsolicited text messages to phone numbers that are registered on the DNC.

21. In the aforementioned video, Saunders explains how Certified Media avoids liability by hiding who it is when sending unsolicited text messages stating, "This is the most important, in my opinion, is ***never give out personal information through the text. As you can see right here, this is not a legit business name***. This is very general, and we say it because it gives people a little bit more, it gives people a little bit of clarity and it already handles an objection. If you remove this and say, hey John, it's Sam. We're working in the neighborhood, they're going to say, what

[5] https://www.youtube.com/watch?v=pCV1uzR1CPs – 2 minutes, 4 seconds
[6] https://vimeo.com/1114270359 - 57 seconds

company are you with? And ***that's a question that we always ignore***…"[7] (emphasis added)

22. A little later in the video, Saunders mentions scrubbing lists, but this does not involve scrubbing to avoid calling numbers on the DNC. Instead, Saunders is referring to avoiding sending text messages to consumers who could bring litigation against Certified Media. Saunders states clearly, "Lastly, always scrub the TCPA. So we have this inside of Phantom. If you're buying data from Phantom, just check the box off that says scrub TCPA. This is basically scrubbing litigators and complainers***. So anyone who's ever complained about a text or call in the past, or anyone who's a litigator that purposely puts their name on that list, it will remove them***. If you want to, you can definitely, I guess a question I get pretty often is, ***what about DNC***? Again, you can talk to a lawyer about that. ***You are taking a risk if you are texting people on the DNC, but if you're following these rules, typically it is not going to be that big of a deal. I think you're subject to pay $1500 per text***. If someone complains that they're on the DNC, we've only had to deal with two of those. They all come from one person. So only one time we had to deal with that twice could have very easily been avoided. ***We actually will reach out to people on***

[7] Id. – 2 minutes, 15 seconds

***the DNC***. I'm not telling you what to do, but just, you know, take that into consideration…"[8] (emphasis added)

23. As per the above, Plaintiff received unsolicited text messages to her cell phone that is registered on the DNC, from text messages that either identify a fake company name, or that avoid providing a name altogether.

24. In response to these text messages, Plaintiff LoPresti brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF LOPRESTI'S ALLEGATIONS

25. Plaintiff LoPresti is the sole owner and user of her cell phone number ending in 4483.

26. Plaintiff LoPresti registered her cell phone number on the DNC on May 8, 2005.

27. Plaintiff LoPresti uses her cell phone number for personal use only as one would use a landline telephone number in a home.

28. Plaintiff LoPresti has never advertised her cell phone number for business purposes.

[8] Id. – 4 minutes, 11 seconds

29. Plaintiff LoPresti's cell phone number has never been associated with a business.

30. Plaintiff LoPresti pays for her cell phone service.

31. Plaintiff LoPresti mainly uses her cell phone number to communicate with family and friends, and for household purposes.

32. The text messages that Plaintiff LoPresti received from Defendant Certified Media were all received more than 31 days after the Plaintiff registered her cell phone number on the DNC.

33. On September 14, 2024 at 6:42 PM, Plaintiff LoPresti received an unsolicited text message to her cell phone from 339-204-6536:




*Figure 1- September 14, 2024*

34. MA Solar Incentives is a fictional name that, based on the Factual Allegations, was used by Certified Media to avoid liability for unlawful texting activity.

35. On September 15, 2024 at 7:42 PM, Plaintiff LoPresti received a 2nd unsolicited text message to her cell phone from 339-204-6536:




*Figure 2- September 15, 2024*

36. Plaintiff LoPresti did not request information about solar, or make a request for a solar quote.

37. The text messages are solicitations as they allege that Plaintiff can get "solar for nothing out of pocket" but then refer to receiving a quote in the first text message, implying that there could be a cost. The second text message mentions how Plaintiff can "save a ton with solar."

38. Massachusetts does offer solar incentives that include tax credits and discounts in acquiring solar panels, but there is still a cost to the consumer.[9]

39. Contrary to the first text message, Massachusetts does not have a free solar panel program:

[9] https://www.thisoldhouse.com/solar-alternative-energy/reviews/solar-incentives-massachusetts

## Does Massachusetts Have a Free Solar Panel Program?

No, you can't get free solar panels in Massachusetts, but the state offers several solar rebates and tax incentives to reduce costs. This includes the Residential Renewable Energy Income Tax Credit and Solar Massachusetts Renewable Target (SMART) Program, plus property and state sales tax exemptions. [10]

40. Plaintiff texted 339-204-6536 back on September 18, 2024 asking for more information by email to find out who the telemarketer is.

41. In response to the text that Plaintiff LoPresti sent, she received a phone call from 978-228-1145 at 1:21 PM on September 18, 2024.

42. The purpose of this call was to schedule an appointment for a solar quote.

43. Plaintiff asked the employee to send her an email with information, but she didn't receive anything.

44. When 339-204-6536 is called back, it is answered by a Certified Media employee.

45. Other consumers have posted complaints about text messages that they received from what appears to be the same sender as Defendant using the name MA Solar Incentives or Solar Incentives offering no out-of-pocket costs and a free quote:

- "I recieved the same...... they just texted me back stating it was Ciara with Chepachet Solar Incentives Program!"[11]

---

[10] Id.
[11] https://www.numberguru.com/phone/401/297/2226/

- "My name is Ciara with the MA Solar Incentives Program. Im reaching out because you're in a location to get solar for no up front costs! Do you still want a free quote or more info? :)"[12]
- "Cold text"[13]
- "They said I qualify for solor for no out of pocket costs, then asked if I want a 'free quote'"[14]
- "Asks who this is – then offers solar quotes."[15]
- "They asked if I was my name, oddly they used my birth name…not sure if they got it from database because I had talked to a dentist right before then."[16]

46. Plaintiff LoPresti filed a TCPA lawsuit against Sunrun because Certified Media sold her information to a Sunrun employee.[17]

47. Through Discovery, Sunrun revealed that Certified Media was responsible for sending text messages to Plaintiff LoPresti's cell phone.

48. On January 29, 2025 at 10:31 AM, Plaintiff LoPresti received a 3rd unsolicited text message to her cell phone from 339-203-9903 that is identical to the text message she received on September 14, 2024:

[12] Id.
[13] Id.
[14] Id.
[15] Id.
[16] Id.
[17] Case number 4:2025cv00517




*Figure 3 - January 29, 2025*

49. On January 30, 2025 at 11:31 AM, Plaintiff LoPresti received a 4th unsolicited text message to her cell phone from 339-203-9903 that is identical to the text message that she received on September 15, 2024:




*Figure 4 - January 30, 2025*

50. On August 22, 2025 at 12:36 PM, Plaintiff LoPresti received a 5th unsolicited text message to her cell phone from 844-715-4563:




*Figure 5 - August 22, 2025*

51. On September 3, 2025 at 11:22 AM, Plaintiff LoPresti received a 6th unsolicited text message to her cell phone from 339-463-5914:




*Figure 6 - September 3, 2025*

52. This text message identifies the name Zoe and contains nearly identical wording to the text messages Plaintiff received on September 14, 2024 and January 29, 2025.

53. On September 12, 2025 at 1:18 PM, Plaintiff LoPresti received a 7th unsolicited text message to her cell phone from 844-715-4563:




*Figure 7 - September 12, 2025*

54. On November 22, 2025 at 11:05 AM, Plaintiff LoPresti received an 8th unsolicited text message to her cell phone from 339-338-1457:




*Figure 8 - November 22, 2025*

55. On November 22, 2025 at 6:05 PM, Plaintiff LoPresti received a 9th unsolicited text message to her cell phone from 339-338-1457:




*Figure 9 - November 22, 2025*

56. Plaintiff LoPresti has never done business with Certified Media and did not provide known consent to receive solicitation text messages.

57. The unauthorized solicitation text messages that Plaintiff LoPresti received from or on behalf of Defendant Certified Media have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

58. Seeking redress for these injuries, Plaintiff LoPresti, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

59. Plaintiff LoPresti brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Certified Media texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.

60. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons

who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff LoPresti anticipates the need to amend the Class definition following appropriate discovery.

61. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

62. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant sent multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

63. **Adequate Representation**: Plaintiff LoPresti will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff LoPresti has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff LoPresti and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff LoPresti nor her counsel have any interest adverse to the Class.

64. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff LoPresti. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an

individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff LoPresti and the Do Not Call Registry Class)**

65. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

66. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

67. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

68. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff LoPresti and the Do Not Call Registry Class members who registered their

respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

69. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff LoPresti and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

70. As a result of Defendant's conduct as alleged herein, Plaintiff LoPresti and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

71. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff LoPresti requests a jury trial.

Respectfully Submitted,

**SARAH LOPRESTI**, individually and on behalf of all others similarly situated,

DATED this 27th day of November, 2025.

By: */s/ Jason R. J. Campbell*
Jason R. J. Campbell Esq.
CHARLESTOWN LAW GROUP
The Schrafft's Center Power House
529 Main Street, Suite P200
Charlestown, MA 02129
Phone: (617) 872-8652
Email: jasonrcampbell@ymail.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

**Lead Counsel for Plaintiff and the putative Class*